UNITED STATES of America

v.

Winnice J. P. CLEMENT, Registrar of Voters of Webster Parish, Louisiana, and the State of Louisiana.

Civ. A. No. 9334.

United States District Court
W. D. Louisiana,
Shreveport Division.
July 14, 1964.

Robert F. Kennedy, Atty. Gen. of the United States, Burke Marshall, Asst. Atty. Gen., John Doar, Frank M. Dunbaugh, and Louis M. Kauder, Attys., Dept. of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., Shreveport, La., for the Government.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Harry J. Kron, Jr., Asst. Atty. Gen., Baton Rouge, La., Louis H. Padgett, Dist. Atty. for Twenty-Sixth Judicial Dist. of Louisiana, Bossier City, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

### FINDINGS OF FACT

1. This suit was filed on February 18, 1963, by the Attorney General of the

United States under the Civil Rights Act of 1957, as amended (42 U.S.C. § 1971 et seq.). The complaint charged the defendants with acts and practices which have deprived citizens of the United States of the right to register to vote in Webster Parish, Louisiana, without distinction of race or color.

2. Named as defendants are Winnice J. P. Clement, Registrar of Voters of Webster Parish, and the State of Louisiana. Mrs. Clement has been the Registrar of Voters in Webster Parish since 1940. As Registrar of Voters her function is to receive applications for registration from prospective electors and to determine whether or not they are qualified to register to vote. Mrs. Clement maintains her office at Minden, Louisiana, in Webster Parish, and also resides in Webster Parish.

3. In 1960, there were 15,713 white persons and 7,045 Negroes of voting age in Webster Parish.

4. In October, 1956, there were 12,957 white persons and 1,773 Negroes registered to vote in Webster Parish. Beginning on January 1, 1957, all voters in Webster Parish had to re-register. By December 31, 1960, there were 12,250 white persons and only 130 Negroes registered.

5. A new registration period began in Webster Parish January 1, 1961. By June 30, 1963, just prior to the trial of this case, there were 8,914 white persons and 229 Negroes registered to vote. As of December 11, 1963, there were 11,142 white persons and 430 Negroes registered to vote in Webster Parish. This Court takes judicial notice of the fact that the Police Jury of Webster Parish, by resolution dated May 5, 1964, adopted a system of permanent registration of voters.

6. Between January, 1957, and September, 1962, and again in February and March, 1963, the Registrar used the oral interpretation of the State or Federal Constitution test as a device to discriminate against Negroes. She administered the oral test only to Negroes; it was not required of white applicants. Professionally trained Negroes were rejected on the basis of the oral test, while white persons with sixth-grade educations and less were registered without taking the test at all. The Registrar reintroduced the oral test in 1963, at a time when large numbers of Negroes began to apply and were successfully completing the citizenship test; and again she used the oral test as a device to discriminate against Negroes.

(a) Thirty-one Negro witnesses testified that they took and failed the oral test at least once, while twenty-seven white witnesses testified that they registered without taking the oral test.

(b) Among the Negroes who were denied registration for failing the oral test were three public school principals, four public school teachers, a dentist, and an insurance agent. At the same time, white persons with sixth-grade, fifth-grade, and even second-grade educations successfully registered without being required to take the test.

(c) The Registrar discontinued using the oral test in September, 1962, but reintroduced it in the latter part of February, 1963, immediately following a six-week period in which Negro registration had sharply increased. In February and March, 1963, the oral test was administered only to Negroes, and those who failed the test were not allowed to fill out application forms. Her purpose in reintroducing the oral test and rejecting Negro applicants was to deny registration to Negroes on account of their race; its reintroduction had the practical effect of discouraging Negroes from attempting to register.

7. From January, 1957, until at least March 1963, the Registrar employed the following procedures to delay and hinder the registration of Negroes but did not

impose such procedures on white applicants:

(a) For at least two years prior to September, 1962, the Deputy Registrar discriminatorily refused to process the applications of Negroes when she was alone in the office, but throughout that period she processed the applications of white persons in the absence of the Registrar.

(b) The Registrar required Negro applicants to wait outside the Registrar's office and enter one-at-a-time, but allowed white persons to enter as many as four-at-a-time. The one-at-a-time rule was invoked as to Negroes even when the Registrar and Deputy Registrar were both in the office. Under this practice, Negroes were denied an opportunity to attempt to register because of time limitations that would not have been imposed on them if the Registrar and her deputy had treated them as they do white applicants.

(c) The Registrar has required some Negroes, but not white applicants, to produce two witnesses to identify them before allowing them to register. This unreasonable and arbitrary requirement was for the purpose of delaying and hindering registration of Negro applicants and not for the purpose of assuring the Registrar of the applicant's identity and residence.

8. September 13, 1962, the Registrar commenced using the multiple-choice "citizenship" test. As of August 31, 1962, there were 8,349 white persons and only 98 Negroes registered to vote in Webster Parish. Thus 53% of the adult white population and 1.3% of the adult Negro population were registered to vote when the new test went into effect.

9. Between September 13, 1962, and June 25, 1963, the Registrar used the application form as a device to discriminate against Negro applicants for registration to vote in Webster Parish. The application form was used as a test for Negroes but not for white persons. Negro applicants, including school teachers, were rejected for inconsequential errors or omissions without being given an opportunity to correct their application forms. White applicants were given whatever help they needed to complete their forms correctly. Of the 527 white persons who applied between September 13, 1962, and June 25, 1963, only one was rejected on the basis of the application form. Of the 178 Negro applicants who were allowed to fill out application forms in the same period, twenty-four were rejected for "errors" or omissions on their application forms, although every one of the twenty-four passed the multiple-choice test.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under 42 U.S.C. § 1971(d) and under 28 U.S.C. § 1345.

2. The Attorney General is authorized to bring this action on behalf of the United States under 42 U.S.C. § 1971(c) to obtain preventive relief against acts and practices by the Registrar which would deprive other persons of rights and privileges secured by 42 U.S.C. § 1971 (a).

3. The State of Louisiana is properly joined as a party defendant pursuant to 42 U.S.C. § 1971(c).

4. Acts and practices of the defendant Registrar which violate 42 U.S.C. § 1971(a) are also deemed acts and practices of the defendant State. 42 U.S.C. § 1971(c).

5. 42 U.S.C. § 1971(a) forbids any distinctions in the voting process, including registration for voting, based upon race or color.

6. The fact that Negro registration declined between 1956 and 1960 from 1,773 to 130 while white registration showed no appreciable decline at all, and the fact that since 1961 white registration has proceeded at the same rate as in prior periods while Negro registration remained token only, creates the pre-

sumption that Negro citizens have been deprived of the right to vote without distinction of race or color; and, in the absence of proof by defendants that the rejected Negroes were not qualified under the standards and requirements applied to the accepted white persons, discrimination must be found.

■ 7. The practice of using the interpretation test or any other test as a device to discriminate against Negroes is in violation of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

■ 8. The practice of denying registration to Negro applicants on account of errors or omissions on their application forms, although in spite of these errors their applications show them to possess all of the substantive qualifications and none of the disqualifications under Louisiana law, while permitting white applicants who have made similar errors or omissions on their application forms to register, is in violation of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

■ 9. The practice of denying registration to Negro applicants on account of errors or omissions in their application forms, while registering white applicants who have been aided and assisted by the Registrar in filling out their application forms, is in violation of 42 U. S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States.

■ 10. The practice of denying Negroes an opportunity to attempt to register and of discouraging Negroes from attempting to register through the imposition of procedures and requirements that are not imposed upon white applicants is in violation of 42 U.S.C. § 1971 (a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States. From the evidence shown in this case it can be reasonably inferred that other Negroes who were qualified to vote were discouraged from attempting to register by the discriminatory acts of the Registrar.

■ 11. Plaintiff contends that the imposition of the "citizenship" test as a prerequisite to registration, when a majority of white adults had been registered without being subjected to such a requirement, and when only a small percentage of adult Negroes were registered, is a violation of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the United States Constitution. However, as this Court said in United States v. Crawford, (W.D.La., No. 9335; opinion dated May 25, 1964) 229 F.Supp. 898, to enjoin the use of the "citizenship" test or any other requirement not previously required of whites in Webster Parish would " 'freeze' the unlawful practices of the Registrar into permanent policy." *

■ 12. In Webster Parish the Register must process applications for registration by Negroes in the same manner that applications of all other voters are processed. A registrar constitutionally cannot use the voter application form or the oral interpretation test in any manner which will impose a heavier burden upon Negro applicants than upon white applicants.

### DECREE

Pursuant to the Findings of Fact and Conclusions of Law entered this date:

1. This Court finds that the Registrar of Webster Parish, Louisiana, and her deputy, engaged in acts and practices which have deprived Negro citizens of that Parish of the rights secured by the Fifteenth Amendment to the United States Constitution and by 42 U.S.C. § 1971(a), and that the deprivations of such rights have been pursuant to a pattern and practice of racial discrimination.

2. Therefore, it is ordered, adjudged and decreed that the defendant State of

---

* See also United States v. Atkins, 5 Cir., 323 F.2d 733, 744. Contra, United States v. Louisiana, et als., D.C., 225 F. Supp. 353.

Louisiana and the defendant Winnice J. P. Clement, Registrar of Voters of Webster Parish, Louisiana, their agents, officers, employees, successors in office and all persons in active concert with them be and each hereby is enjoined from engaging in any act or practice which involves or results in distinctions of race or color in the registration of voters in Webster Parish, Louisiana. Specifically, each of said defendants and persons is enjoined from:

(a) Applying different and more stringent registration qualifications, requirements, procedures and standards to Negro applicants for registration than those which are applied to white applicants in determining whether or not such applicants are qualified to register to vote in Webster Parish, Louisiana.

(b) Using the application form (L.R.–1) in any manner or for any purpose different from and more stringent than that for which it is used in registering white persons in Webster Parish.

3. Applicants who possess the qualifications established by Louisiana law must be registered, and it is the duty of the Registrar fairly and indiscriminately to determine whether the applicants possess these qualifications.

4. It is further ordered that the defendant Registrar shall notify each rejected applicant for registration of the specific reason for his rejection.

5. It is further ordered that the defendant Registrar submit a report in writing, one copy to the Clerk of this Court and one copy to the plaintiff, on or before the tenth day of each month after the date of this decree and until further order of this Court, setting forth the progress in receiving and processing applications for registration during the preceding calendar month. The report shall include:

(a) The dates and places applications were received during the preceding report period and the hours during which the Registrar was available to receive applications.

(b) The action taken by the Registrar on each application for registration during the preceding report period. With respect to accepted applications the report shall state the name and race of the applicant and the date of application. With respect to rejected applications the report shall state the name and race of the rejected applicant, the date of application, and the specific reason for his rejection.

6. It is further ordered that the defendant Registrar make available at the office of the Registrar all registration records of Webster Parish, Louisiana, for inspection and photographing by agents of the United States at any and all reasonable times.

The costs incurred in this proceeding to date are hereby taxed against the defendant Clement, in her official capacity as Registrar.